**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 20, 2019

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  17-14497-GG
Case Style: USA v. Gabriel Garcia-Solar
District Court Docket No: 4:16-cr-10042-KMM-1

A copy of this letter, and the judgment form if noted above, but not a copy of the court's
decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision
was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion
was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

## UNITED STATES COURT OF APPEALS
### For the Eleventh Circuit

_____

No. 17-14497

_____

District Court Docket No.
4:16-cr-10042-KMM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GABRIEL GARCIA-SOLAR,
MOISES AGUILAR-ORDONEZ,
MARTIN VALECILLO-ORTIZ,
JOSE CANDELARIO PEREZ-CRUZ,
ALONSO BARRERA-MONTES,
JOSE FERNANDO VILLEZ-PICO,
JOSE MARTIN LUCAS-FRANCO,

Defendants - Appellants.

_____

Appeals from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is
entered as the judgment of this Court.

Entered: May 22, 2019
For the Court: DAVID J. SMITH, Clerk of Court
By: Djuanna Clark

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14497
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cr-10042-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GABRIEL GARCIA-SOLAR,
MOISES AGUILAR-ORDONEZ,
MARTIN VALECILLO-ORTIZ,
JOSE CANDELARIO PEREZ-CRUZ,
ALONSO BARRERA-MONTES,
JOSE FERNANDO VILLEZ-PICO,
JOSE MARTIN LUCAS-FRANCO,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(May 22, 2019)

Before TJOFLAT, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Gabriel Garcia-Solar, Moises Aguilar-Ordonez, Martin Valecillo-Ortiz, Jose Candelario Perez-Cruz, Alonso Barrera-Montes, Jose Fernando Villez-Pico, and Jose Martin Lucas-Franco appeal following their convictions and sentences for conspiracy while aboard a vessel subject to the jurisdiction of the United States to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of 46 U.S.C. § 70503(a)(1) and possession while aboard a vessel subject to the jurisdiction of the United States with intent to distribute a mixture and substance containing a detectable amount of cocaine, also in violation of 46 U.S.C. § 70503(a)(1).

On appeal, either independently or by adoption, the defendants have raised the following issues: (1) whether the evidence was sufficient to support their convictions; (2) whether the admission of testimonial hearsay violated their rights under the Confrontation Clause of the Sixth Amendment; (3) whether the government's destruction of certain evidence violated their rights to due process; (4) whether their convictions should be vacated because the court improperly questioned a witness for the government; (5) whether their convictions should be vacated based on prejudicial comments made by the government during closing arguments; (6) whether the aggregate effect of various trial errors warrants reversal

2

of their convictions; (7) whether the district court erred in determining that it had jurisdiction over the case; (8) whether the district court erred at sentencing in declining to apply a minor role reduction; and (9) whether the defendants' total sentences were reasonable.[1]

We address each issue in turn.

## I.

Perez-Cruz, Barrera-Montes, Aguilar-Ordonez, and Villez-Pico argue that the evidence was insufficient to support their convictions.

We review the denial of a motion for acquittal *de novo*. *United States v. Hernandez*, 433 F.3d 1328, 1332 (11th Cir. 2005). We review the sufficiency of the evidence supporting a conviction *de novo*. *Id.* All factual and credibility inferences are made in favor of the government. *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000).

The evidence is sufficient to support a conviction if a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt. *United States v. Diaz-Boyzo*, 432 F.3d 1264, 1269 (11th Cir. 2005). The evidence does not have to exclude every reasonable hypothesis of

---

[1] We note that Villez-Pico purported in his brief to adopt his codefendants' arguments in their entirety. Because he was required to describe in detail which portions of which codefendants' arguments he intended to adopt, we find that his statement of adoption is inadequate, and we construe his brief as addressing only those issues that he independently raised. *See* 11th Cir. R. 28-1(f).

innocence. *Hernandez*, 433 F.3d at 1334-35. The jury may choose between reasonable constructions of the evidence. *Id* at 1334.

To demonstrate a conspiracy, the government must prove that two or more persons entered into an agreement to commit an offense and that the defendant knowingly and voluntarily participated in the agreement. *United States v. Tinoco*, 304 F.3d 1088, 1122 (11th Cir. 2002). The defendant's presence on a vessel is a material factor supporting his participation in a conspiracy relating to that vessel, especially when the vessel contains a high value of contraband. *Id.* at 1122-23. When reviewing a conspiracy or possession conviction involving a vessel with narcotics, we consider: (1) the probable length of the voyage; (2) the size of the contraband shipment; (3) the necessarily close relationship between captain and crew; (4) the obviousness of the contraband; and (5) other factors, including diversionary maneuvers, attempts to flee, and inculpatory statements made after arrest. *Id.* at 1123. Once the government shows that a large quantity of contraband was on the vessel, it may meet its burden of showing the defendant's knowledge by proving any one of the other listed factors. *Id.*

The government can prove possession of a controlled substance with intent to distribute by showing actual or constructive possession. *Id.* The defendant constructively possesses a controlled substance if he exercises some measure of control over the contraband, either exclusively or in association with others. *Id.*

4

His intent to distribute may be inferred if a large quantity of controlled substances were seized by the government.  *Id.*

Here, the district court did not err in denying the defendants' motions for acquittal because, viewed in the light most favorable to the government, the evidence was more than sufficient to support their convictions.  The evidence showed that: the patrol team on the Navy aircraft spotted the occupants of a vessel jettisoning cargo into the ocean;  the patrol crew marked the location of the jettison and followed the vessel as it left the area; the patrol crew never lost track of the vessel, having either visual or radar contact with it at all times, and no other vessels were within 20 miles of the target vessel; the vessel that the aircraft followed from the jettison site was then intercepted by the Coast Guard; when the target vessel first saw the Coast Guard coming to intercept it, the vessel changed direction and sped away; the vessel eventually stopped, and the seven defendants were on board; a Coast Guard boat returned to the location of the jettisoned cargo marked by the patrol aircraft crew, where the Coast Guard team found numerous packages that later tested positive for cocaine; the 940 kilograms of cocaine retrieved from the water was worth at least $20 million; the recorded location data from the GPS device found on the defendants' boat and the GPS spot tracker found with the

jettisoned packages of cocaine[2] showed that the two devices came together in the same location 300 miles south of Mexico and then traveled in the same direction; and the spot tracker and GPS device eventually separated at approximately the same location as the debris field (where the cocaine was jettisoned).  A reasonable trier of fact could infer from the GPS data that the cocaine was loaded onto the defendants' boat (a panga) at a location 300 miles south of Mexico, and was transported on defendants' boat until was jettisoned after the Navy aircraft had noticed the boat and started tracking it.

A reasonable trier of fact could find them guilty of the conspiracy count because a reasonable interpretation of the evidence is that the boat they were present on was the same boat that was seen jettisoning cargo into the water, which the Coast Guard later discovered to be 940 kilograms of cocaine.  That amount of cocaine on a small fishing boat would have been obvious to anyone aboard, and it is unlikely that someone who was not in agreement with the plan to smuggle that much cocaine would have wanted or been allowed to participate in the voyage.

A reasonable trier of fact also could find the defendants guilty of the possession with intent to distribute count because their presence on the boat transporting such a large amount of cocaine established at least their constructive

---

[2]    When the Officers retrieved the jettisoned packages of cocaine, they found that a GPS spot tracker had been attached to the cocaine.  The Officers were thus able to retrieve information as to the successive locations of the cocaine over time, as described in the text.

possession of the cocaine.  Additionally, because the 940 kilograms was worth at least $20 million, their intent to distribute it can be inferred.

II.

All seven defendants argue that their convictions should be vacated because the admission of testimonial hearsay violated their rights under the Confrontation Clause of the Sixth Amendment.

Generally, the district court's determination as to whether the Confrontation Clause of the Sixth Amendment was violated is subject to *de novo* review.  *United States v. Yates*, 438 F.3d 1307, 1311 (11th Cir. 2006) (*en banc*).

The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The Confrontation Clause protects a defendant's right to confront those individuals who make "testimonial" statements against him.  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309-10 (2009) (citing *Crawford v. Washington*, 541 U.S. 36 (2004)).  This means that the prosecution may not introduce testimonial hearsay against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination.  *Crawford*, 541 U.S. at 53-54, 68.

When a law enforcement officer testifies regarding what an interpreter told him that a defendant said, the defendant has a Sixth Amendment right to confront

the interpreter.  *Charles*, 722 F.3d at 1323.  In *Charles*, we noted that statements to an interpreter are testimonial when they are made during an interrogation where the defendant is detained and suspected of a crime.  *Id.*  Next, we found that the officer's testimony related to the interpreter's out-of-court statements, not the defendant's, because the questioning required the use of the interpreter and the officer only knew what the interpreter told him.  *Id.* at 1324.  We stated that the officer could not act as a "surrogate" for the interpreter, and his testimony did not satisfy the defendant's constitutionally protected right to cross-examine the interpreter.  *Id.* at 1330.

When Confrontation Clause violations occur, we review them for harmless error.  *United States v. Gari*, 572 F.3d 1352, 1362 (11th Cir. 2009).  In reviewing such violations for harmless error, we consider the importance of the hearsay statements to the government's case, whether the statements were cumulative, whether there is evidence to corroborate the hearsay statements, the extent of cross-examination that the court permitted, and the strength of the government's case.  *Id.* at 1362-63.

Here, although the district court may have erred in allowing the U.S. Coast Guard officer to testify regarding what the interpreter told him, such error was harmless.  Because Garcia-Solar spoke with the interpreter to communicate with law enforcement while his boat was detained for investigation of the defendants'

8

potential criminal activity, the statements he made were testimonial.  Therefore, the defendants had the right to confront and cross-examine the interpreter before the officer testified.

Reversal on this basis is not warranted, however, because the testimony was only relevant to jurisdictional issues, which had already been decided, and to show that the defendants were not entirely truthful or forthcoming when the Coast Guard first interdicted their boat.  Moreover, although the defendants were not able to cross-examine the interpreter, excluding the limited testimony would not have impacted the outcome of the case because the government's other evidence against them was very strong, as detailed above.  As such, the error in admitting the testimony was harmless, and we will not vacate the defendants' convictions on that basis.

Moreover, although Garcia-Solar and the other defendants were not able to cross-examine the interpreter, excluding the limited testimony would not have impacted the outcome of the case because the government's other evidence against the defendants was very strong.  Given the strength of the evidence against the Defendants, the admission of the testimony was harmless.

### III.

All defendants, except Villez-Pico, have argued that the destruction of certain evidence, including their vessel, its contents, and portions of video and

audio recordings leading up to their arrest, violated their due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963).

We ordinarily review an alleged *Brady* violation *de novo*. *United States v. Jones*, 601 F.3d 1247, 1266 (11th Cir. 2010). Whether the government's destruction of evidence resulted in a due process violation is a mixed question of law and fact. *United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006). We review the district court's legal conclusions *de novo* and its factual findings for clear error. *Id.*

In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. To establish a *Brady* violation, the defendant must show that (1) the government possessed evidence favorable to him; (2) he did not possess the evidence and could not obtain it with reasonable diligence; (3) the government suppressed the evidence; and (4) had the evidence been disclosed, a reasonable probability exists that the outcome of the proceeding would have been different. *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001).

To show a due process violation stemming from the government's destruction or loss of evidence, "the defendant must show that the evidence was likely to significantly contribute to his defense." *Revolorio-Ramo*, 468 F.3d at 774

(quotation omitted).  To meet that standard, the defendant must show that the evidence possessed "an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  *United States v. Brown*, 9 F.3d 907, 910 (11th Cir. 1993) (quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984)).  If the destroyed evidence was not clearly exculpatory but only "potentially useful," a defendant must show that the government acted in bad faith.  *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988); *Illinois v. Fisher*, 540 U.S. 544, 547-49 (2004).

In *Revolorio-Ramo*, a maritime drug interdiction case, we held that the destruction of the defendants' vessel did not violate their due process rights. 468 F.3d at 775.  We noted that although the fishing equipment aboard the ship was potentially exculpatory, the defendants were able to present alternative evidence by cross-examining the officers who viewed the vessel, testifying themselves, and presenting documentation for the fishing equipment.  *Id.* at 774-75.  The Coast Guard had also attempted to document the condition of the vessel by taking video and photographs, and there was no suggestion that the poor quality of that documentation was intentional.  *Id.* at 775; *see also United States v. Hernandez*, 864 F.3d 1292, 1305-07 (11th Cir. 2017) (holding that no due process violation occurred in prosecution for cocaine smuggling when the Coast Guard

sank the defendants' vessel, which contained potentially useful clothing and equipment).

### a. *Brady violation*

Here, no *Brady* violation occurred, and the district court did not err in denying the defendants' motions for a mistrial based on the destroyed evidence. Their *Brady* argument fails because they have not established that the government possessed any evidence that was actually favorable but suppressed it when they requested it.

### b. *Clearly exculpatory evidence*

Turning to the destruction of evidence by the Coast Guard and Navy, the defendants have not established that any of the lost evidence was likely to significantly contribute to their defense. They have not established that any of the evidence possessed an exculpatory value that was apparent at the time that it was destroyed, or that they would be unable to obtain comparable evidence by other reasonably available means. Although they argue that the 90-page document was clearly exculpatory, Officer Hadley testified that he believed it contained no relevant information. While it probably would have been better if he had preserved the document, he had little reason to believe that the document was relevant to the drug smuggling investigation he was engaged in. Moreover, the defendants presented other evidence and testimony to establish that they were part

12

of a fishing cooperative on a rescue mission.  *See Revolorio-Ramo*, 468 F.3d at

774-75; *Brown*, 9 F.3d at 910.  They also have not explained why they could not

have obtained additional documentation of their membership in the cooperative or

the vessel's registration if they had sought it.  *See Brown*, 9 F.3d at 910.  It is also

worth noting that, even if the document conclusively established that the

defendants were members of a fishing cooperative, it would not preclude the

possibility that they conspired to, and were, smuggling cocaine.

As to the boat itself, the fuel canisters, the motors, the knife, and any other

items that sunk with the boat, nothing about them was clearly exculpatory at the

time the Coast Guard sunk them.  *See Brown*, 9 F.3d at 910.  Rather, the

defendants have only shown that they could have examined that evidence and

possibly used it in their defense.  However, they were able to present other

evidence regarding the condition and contents of the boat by cross-examining

Officers Hadley, Higgins, and Hames, who were all present when the panga was

interdicted.  *See Revolorio-Ramo*, 468 F.3d at 774-75.  Additionally, the most

clearly exculpatory evidence from the boat—the swabs from the boat testing

negative for cocaine—was preserved and presented to the jury.  Likewise, the

defendants have not shown that any of the missing audio or video recordings

possessed any apparent exculpatory value, but have only speculated that the

mission recordings might establish that the patrol crew lost track of the original

target panga.  *See Brown*, 9 F.3d at 910.  Moreover, they had other evidence to supplement the missing recordings, because they were able to cross-examine two members of the aircraft crew, and did so at length, regarding gaps in the recordings and whether they ever lost contact with the target vessel.  *See Revolorio-Ramo*, 468 F.3d at 774-75.

### c.  *Potentially useful evidence*

At best, the lost or destroyed evidence was potentially useful, but the defendants have not shown that their due process rights were violated because they have not shown that the loss or destruction of the evidence was done in bad faith. As to the boat and its contents, the Coast Guard officer testified that leaving the boat in the water was a hazard to navigation, it was not feasible for the cutter to tow it back to port, he would not feel safe driving it back to land, and it was standard protocol for the Coast Guard to sink vessels.  Likewise, although the missing portions of the recordings may have been potentially useful, the evidence showed that the patrol crew only recorded those portions of a mission that appeared to be important, it was not always possible to keep the camera trained on a target, an analyst cropped the raw footage from the mission, and the film and digital storage space for their footage was limited.

Accordingly, we affirm the denial of the defendants' motions for judgment of acquittal based on the missing or destroyed evidence.

IV.

Barrera-Montes and Perez-Cruz argue that the district court improperly

questioned a government witness at trial.

The district court may examine witnesses, regardless of who calls the

witness, and a party may object to the court's questioning.  Fed. R. Evid. 614(b)-

(c).  When a defendant fails to object to the district court's questioning of a

witness, the issue is waived unless it amounts to plain error.  *United States v. Van*

*De Walker*, 141 F.3d 1451, 1452 (11th Cir. 1998).  For an error to be plain, it must

be resolved by the explicit language of a statute or rule or a precedent from this

Court or the Supreme Court directly on point.  *United States v. Lejarde-Rada*, 319

F.3d 1288, 1291 (11th Cir. 2003).

A court's questioning of a witness may deny the defendant the right to a fair

trial if the questioning "strays from neutrality" or acts as an advocate.  *United*

*States v. Wright*, 392 F.3d 1269, 1274 (11th Cir. 2004).  In *Wright*, we held that the

district court did not abuse its discretion when, during a sidebar conference, it

directed the government witness elicit certain testimony that would allow the court

to better understand important evidence.  *Id.* at 1275.

Here, the district court did not plainly err by questioning the government

witness.  The Federal Rules of Evidence permit the court to question witnesses,

and nothing about the court's questioning indicates that it strayed from neutrality

or acted as an advocate.  Rather, the court asked for information that would help it

better understand the value of the cocaine involved in the case, which was a proper

exercise of its questioning authority.

V.

Garcia-Solar, Perez-Cruz, and Lucas-Franco argue that the government

made improper and highly prejudicial statements during its rebuttal closing

arguments.

Ordinarily, we review the denial of a motion for a mistrial for abuse of

discretion.  *United States v. McGarity*, 669 F.3d 1218, 1232 (11th Cir. 2012).

However, when a defendant failed to object at trial to improper statements by the

government, we review the statements for plain error.  *United States v. Mueller*, 74

F.3d 1152, 1157 (11th Cir. 1996).  To show plain error, the defendant must show

that the remarks were improper and prejudiced a substantial right.  *Id.*  We will

reverse due to prosecutorial misconduct only when the misconduct was "so

pronounced and persistent that it permeated the entire atmosphere of the trial."  *Id.*

We have held that plain error affecting the substantial rights of the defendant

occurred when, in front of the jury, counsel for the government "continuously

made critical remarks about" defense counsel's character and repeatedly accused

him of intentionally misleading the jury, witnesses, and the court.  *United States v.*

*McLain*, 823 F.2d 1457, 1462 (11th Cir. 1987), *overruled on other grounds by*

16

*United States v. Watson*, 866 F.2d 381, 385 n.3 (11th Cir. 1989); *see also Zebouni v. United States*, 226 F.2d 826, 827 (5th Cir. 1955)[3] (noting that where the court had made disparaging remarks about an attorney, the defendant's counsel was entitled to the courtesy and respect of the court).  Similarly, the government may not express its personal beliefs about the defendant's credibility during closing arguments.  *Mueller*, 74 F.3d at 1157.  In *Mueller*, the government called into question the credibility of the defendant's testimony, and we stated that a "sharp curative instruction" would have been warranted if the defendant had objected when the comments were made.  *Id.*  However, we found that the comments did not reach the level of plain error because they did not undermine the fundamental fairness of the trial.  *Id.*  We have also found that where the government stated that the defendant had fabricated his defense theory after being arrested, there was no plain error affecting his substantial rights because the trial testimony supported the assertion.  *United States v. Abraham*, 386 F.3d 1033, 1036 (11th Cir. 2004).

Here, as an initial matter, we will review the government's statements for plain error, because the defendants did not object to them at trial.  Under that standard, the argument fails.  Although the government's comments may have been improper, they did not undermine the fundamental fairness of the trial.  There

---

[3] Under *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), we are bound by cases decided by the former Fifth Circuit before October 1, 1981.

was overwhelming evidence to show that the defendants were engaged in cocaine smuggling.  Moreover, the evidence at trial supported the government's assertions that the defense was attempting to mislead the jury with its theory that the defendants' boat was not the same one that the Navy patrol crew initially targeted. Thus, the government's remarks do not warrant reversal because they were not so pronounced or persistent that they permeated the entire atmosphere of the trial.

VI.

Garcia-Solar, Barrera-Montes, Perez-Cruz, and Lucas-Franco argue that the cumulative effect of the above purported trial errors warrants reversal of their convictions.

When multiple nonreversible errors occur, their cumulative effect may amount to a denial of a defendant's constitutional right to a fair trial. *United States v. Margarita Garcia*, 906 F.3d 1255, 1280 (11th Cir. 2018).  When considering a claim of cumulative error, we first address each individual claim and then examine the alleged errors in the aggregate. *Id.*  In considering the total effect of the errors, relevant factors include: (1) the nature, number, and interrelationship of the errors; (2) how the district court dealt with the errors; and (3) the strength of the government's case and length of the trial. *Id.* at 1281.

Here, the defendants have not shown that the cumulative effect of the asserted errors warrant reversal.  The only errors they have arguably shown are the

admission of testimonial hearsay, the Coast Guard's destruction of the document, and the statement that defense counsel intended to mislead the jury. These errors are only interrelated to the extent that are relevant to the defendants' assertion that they were at sea for a rescue mission. However, none of those errors prevented the defendants from presenting evidence in support of that story, nor did those errors have any direct relevance to any element of the offenses. The government presented ample evidence to support all of the defendants' convictions, and the aggregate effect of the errors that may have occurred did not deny them of their right to a fair trial.

## VII.

All seven defendants argue that the district court erred in determining that it had jurisdiction because the State Department Certification on which the determination was based contained false information and the Maritime Drug Law Enforcement Act ("MDLEA") is unconstitutional.

We review a district court's interpretation and application of a statute concerning its subject-matter jurisdiction *de novo*. *United States v. Cruickshank*, 837 F.3d 1182, 1187 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 1435 (2017). We review whether a statute is constitutional *de novo. Id.* Under the prior precedent rule, we are "bound to follow a prior binding precedent unless and until it is

overruled by this Court *en banc* or by the Supreme Court." *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008).

Under the MDLEA, a "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality." 46 U.S.C. § 70502(c)(1)(A). A "vessel without nationality" includes "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(C). The foreign nation's response to a claim of registry "is proved conclusively by certification of the Secretary of State or the Secretary's designee." *Id.* § 70502(d)(2). Jurisdiction over a vessel covered by the MDLEA "is not an element of an offense," but instead is a "question[] of law to be determined solely by the trial judge." *Id.* § 70504(a).

We have held that "the conduct proscribed by the [MDLEA] need not have a nexus to the United States because universal and protective principles support its extraterritorial reach." *United States v. Campbell*, 743 F.3d 802, 810 (11th Cir. 2014); *see also Cruickshank*, 837 F.3d at 1188 (holding that the lack of a nexus requirement does not render the MDLEA unconstitutional). We have also rejected the argument that a jury must determine jurisdiction under the MDLEA. *Campbell*, 743 F.3d at 810; *see also Cruickshank*, 837 F.3d at 1191-92. We held that the admission of a State Department Certification to establish jurisdiction

under the MDLEA does not implicate the Confrontation Clause, because a jurisdictional determination does not implicate the guilt or innocence of a defendant. *Campbell*, 743 F.3d at 806–07. Likewise, we held in *Cruickshank* that the pre-trial use of a State Department Certification to determine jurisdiction does not violate due process or the Sixth Amendment. *Cruickshank*, 837 F.3d at 1192.

We have held that, because the MDLEA states that a State Department Certification is conclusive proof of a foreign nation's response regarding a vessel's nationality, the Certification cannot be overcome by challenges regarding the information provided to the foreign government or the vessel's actual registration. *Hernandez*, 864 F.3d at 1299. We found in *Hernandez* that the MDLEA does not require that any particular information be conveyed to the foreign government or that a vessel's actual registry overrides Certification. *Id.*

The district court did not err in determining that it had subject matter jurisdiction. We reject the defendants' challenges to the information in the Certification because they have not explained how those statements would undermine the finding of jurisdiction. To the extent they contend that those discrepancies undermine the statement that the Mexican government could not confirm or deny the vessel's registration, the argument is misplaced because actual Mexican registration cannot overcome the conclusive proof of the State

Department Certification that the Mexican Government responded that it could not confirm or deny the vessel's nationality.

Because the State Department Certification indicated that the government of Mexico could not confirm or deny the vessel's nationality, the government established that the defendants' vessel was without nationality.  Moreover, binding precedent forecloses the defendants' constitutional challenges to the MDLEA based on the use of the State Department Certification, the jurisdictional determination being made pre-trial, and not requiring a nexus between the alleged offense and the United States.

## VIII.

Garcia-Solar and Barrera-Montes argue that the district court should have reduced their offense levels at sentencing due to their minor roles in the offense.

We review a district court's determination of a defendant's role in his offenses as a finding of fact that will be reviewed only for clear error.  *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (*en banc*).

A court may decrease a defendant's offense level by two if it finds that the defendant was a "minor participant" in the criminal activity, meaning that he was "less culpable than most other participants, but [his] role could not be described as minimal."  U.S.S.G. § 3B1.2(b) & comment. (n.5).  The defendant bears the

burden of establishing by a preponderance of the evidence that his role in the offense was minor. *See Cruickshank*, 837 F.3d at 1192.

In determining whether a role adjustment is warranted, a district court must evaluate the defendant's role in the relevant conduct for which he has been held accountable at sentencing and his role compared to that of other participants in his relevant conduct. *De Varon*, 175 F.3d at 940. The district court should only grant a downward adjustment for a minor role in the offense if the defendant can establish that he played a minor role in the conduct for which he was held responsible, rather than a minor role in any larger criminal conspiracy. *Id.* at 944. In the drug courier context, "the amount of drugs imported is a material consideration in assessing a defendant's role in [his] relevant conduct" and, in some cases, may be dispositive. *Id.* at 943.

Here, the district court did not clearly err when it found that Garcia-Solar and Barrera-Montes were not minor participants in the crimes of conviction. Neither of them presented any evidence to show that they were less culpable than the average participant in the charged offenses, and it was not relevant that they may have played smaller roles than the uncharged leaders of the overall drug conspiracy. The large amount of drugs involved in the present case further supports the district court's determination.

IX.

Garcia-Solar and Perez-Cruz argue that the district court abused its

discretion by imposing an unreasonable total sentence.[4]

We review the reasonableness of a sentence under a deferential abuse of

discretion standard of review.  *Gall v. United States*, 552 U.S. 38, 41 (2007).  We

first ensure that the district court made no significant procedural error, then

examine whether the sentence was substantively reasonable in light of the totality

of the circumstances.  *Id*. at 51.  Abuse of discretion can be shown when the

district court: "(1) fails to afford consideration to relevant factors that were due

significant weight, (2) gives significant weight to an improper or irrelevant factor,

or (3) commits a clear error of judgment in considering the proper facts."  *United

States v. Osorio-Moreno*, 814 F.3d 1282, 1287 (11th Cir. 2016).  We review a

district court's determination of a defendant's role in his offenses as a finding of

fact that will be reviewed only for clear error.  *United States v. De Varon*, 175 F.3d

930, 937 (11th Cir. 1999) (*en banc*).

   *a.  Procedural reasonableness*

---

[4] Lucas-Franco has also purported to adopt Perez-Cruz's arguments in this regard.
However, Perez-Cruz was sentenced at a separate proceeding from Lucas-Franco, so his
arguments are inapplicable in Lucas-Franco's case.  Therefore, we find that Lucas-Franco
has abandoned any challenge to his total sentence by failing to adequately raise one.  *See United
States v. Bernal-Benitez*, 594 F.3d 1303, 1317 n.20 (11th Cir. 2010); *Sapuppo v. Allstate
Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

A sentence is procedurally unreasonable if the district court erred in calculating the guideline range, treated the Sentencing Guidelines as mandatory, failed to consider the § 3553(a) factors, selected a sentence based on clearly erroneous facts, or failed to adequately explain the sentence. *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010).

The factors that the court must consider include the nature and circumstances of the offense, the history and characteristics of the defendant, the defendant's guideline range, and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(1), (a)(4), (a)(6). The district court sufficiently addresses the § 3553(a) factors when it acknowledges that it has considered the factors and the defendant's arguments. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). A challenge to the sufficiency of the district court's explanations is a "classic procedural issue, not a substantive one." *United States v. Irey*, 612 F.3d 1160, 1194 (11th Cir. 2010) (*en banc*). When imposing a sentence, the court need not "articulate [its] findings and reasoning with great detail." *Id.* at 1195.

Here, Garcia-Solar's and Perez-Cruz's sentences were procedurally reasonable. The district court did not procedurally err by failing to sufficiently address the factor of Garcia-Solar's history and circumstances, or by failing to

consider Perez-Cruz's role in the offense.  The court discussed the societal costs of drug trafficking, basing the guidelines on drug amounts, the defendants' choice to go to trial, and the need to deter other potential smugglers, all of which was relevant to both defendants.  As to Perez-Cruz specifically, the court addressed his arguments when it denied his request for a minor role adjustment.

Additionally, the court specifically stated that it had considered the parties' statements and the § 3553(a) factors.  Thus, the court sufficiently addressed the § 3553(a) factors, and it was not required to provide any more detail for choosing the specific point in the guideline range that it chose.

b. *Substantive reasonableness*

The substantive reasonableness of a sentence is determined in light of the totality of the circumstances, and we will not vacate a sentence as substantively unreasonable unless we are left with the definite and firm conviction that the district court clearly erred in weighing the § 3553(a) factors and imposed a sentence outside the range of reasonable sentences.  *United States v. Turner*, 626 F.3d 566, 573 (11th Cir. 2010).  Although we have not adopted a presumption that a sentence within the guideline range is reasonable, we have stated that we would ordinarily expect a sentence within the guideline range to be reasonable.  *United States v. Joseph*, 709 F.3d 1082, 1105 (11th Cir. 2013).

In the context of an offense level reduction under the Guidelines, we have held that courts may deny the reduction for acceptance of responsibility even when that denial is based on the exercise of a constitutional right. *See United States v. Wright*, 133 F.3d 1412, 1414 (11th Cir. 1998) (affirming the denial of an acceptance of responsibility reduction due to the defendant's challenges to the constitutionality of his convictions). We have also affirmed the denial of downward variances when the denial was based at least in part on the defendant's decision to go to trial. *See United States v. Cavallo*, 790 F.3d 1202, 1237 (11th Cir. 2015) (rejecting the argument that unwarranted sentencing disparities were created by imposing higher sentences for defendants who proceeded to trial instead of pleading guilty, and noting that a defendant who cooperates with the government and pleads guilty is not similarly situated to a defendant that proceeds to trial).

The district court must evaluate all of the § 3553(a) factors, but it may attach greater weight to one factor over the others. *United States v. Dougherty*, 754 F.3d 1353, 1361 (11th Cir. 2014). Ultimately, the sentence imposed must be sufficient but not greater than necessary to satisfy the purposes for sentencing set out in § 3553(a)(2). 18 U.S.C. § 3553(a). These purposes include the need for the sentence to: (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (2) afford adequate deterrence to

criminal conduct; and (3) protect the public from further crimes of the defendant.

18 U.S.C. § 3553(a)(2)(A)-(C).

Here, the district court's consideration of Garcia-Solar's decision to go to trial did not render his total sentence substantively unreasonable because that was not an improper factor.  Moreover, it is clear that the court referenced the defendants' exercise of their right to trial in the context of the need to deter other would-be drug smugglers, which is also an appropriate factor to consider.

Finally, the court did not abuse its discretion by putting greater emphasis on the guideline range—which was driven largely by the amount of cocaine involved in the offense—than on Garcia-Solar's personal reasons for engaging in the conduct.  The court was entitled to attach great weight to the guideline range and less weight on other factors.  Moreover, the court did not base its decision solely on the guideline range, but considered numerous other appropriate factors such as the seriousness of the offense and the impact of drugs on the communities they reach, the need to deter potential smugglers, and the need to protect the public from such crimes.  Although Garcia-Solar's total sentence was substantial, the district court relied on appropriate factors in imposing that sentence, and he has not shown that the court committed a clear error of judgment by imposing a total sentence outside the range of reasonable sentences.

As to Perez-Cruz, his sentence was also substantively reasonable.  Although he argues that his role in the offense justified a lower total sentence, the court was entitled to give significant weight to other factors.  Specifically, the court focused on the guideline range, as determined by the amount of cocaine recovered, the harmful impact of drug smuggling, and the need to deter future drug smuggling.  Additionally, his sentence was within his guideline range, further supporting the conclusion that it was substantively reasonable.

For all of the foregoing reasons, the defendants' convictions and sentences are affirmed.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 22, 2019

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-14497-GG
Case Style: USA v. Gabriel Garcia-Solar
District Court Docket No: 4:16-cr-10042-KMM-1

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joe Caruso, GG at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion